UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
SUSAN TROPEANO, JOSEPH TROPEANO,

                        Plaintiffs,

    -against-

THE CITY OF NEW YORK, *et al.*,

                        Defendants.
------------------------------------------------------------x

**MEMORANDUM and ORDER**

06-CV-2218 (SLT)(LB)

**TOWNES, United States District Judge:**

      On May 12, 2006, Susan Tropeano – who was formerly employed by defendant New York City Department of Education ("DOE") as a teacher at P.S. 66 in Queens – and her husband, Joseph Tropeano, filed the instant action. On October 30, 2006, this Court issued a Memorandum and Order which granted Susan Tropeano's request to proceed *in forma pauperis,* dismissed the complaint in part and directed Mrs. Tropeano to file an amended complaint in order to proceed with this action. In a letter dated January 3, 2007, this Court extended plaintiffs' time to file the amended complaint to March 2, 2007, and advised plaintiffs that this Court would not rule on a request for appointment of counsel until plaintiffs filed the amended complaint.

      Although this Court twice advised plaintiffs that the complaint would be dismissed in its entirety if they failed to file the amended complaint on or before March 2, 2007, plaintiffs have refused to do so, repeatedly stating that they will not file an amended complaint until this Court appoints "reputable" counsel to represent them. Plaintiffs assert that stress-related problems prevent them from complying with this Court's orders, but have nonetheless managed to file several other documents, including a 57-page letter requesting that this Court recuse itself. They have also filed numerous exhibits – albeit not all the documents this Court specifically requested

– and a letter from their psychologist, who urges this Court to appoint counsel on plaintiffs' behalf. For the reasons set forth below, this Court declines to recuse itself, declines to appoint counsel and dismisses plaintiffs' complaint in its entirety.

## BACKGROUND

Plaintiffs' complaint specifically alleges that this Court has jurisdiction under various federal statutes, including Title VII, the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act ("ADA"), the Employee Retirement Income Security Act ("ERISA"), the Civil Rights Act and the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Pursuant to the dictates of 28 U.S.C. § 1915, and in keeping with this Court's affirmative obligation to examine the bases of its jurisdiction, *see FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231 (1990), this Court carefully reviewed the allegations contained in plaintiffs' 143-page complaint. This Court concluded that, despite the complaint's considerable length, it fails to allege facts suggesting a violation of any of these statutes. In addition, the complaint itself suggests certain procedural bars to raising some of these claims.

In a Memorandum and Order dated October 30, 2006 (the "M&O"), this Court explained why certain causes of action – such as plaintiffs' Title VII, ADEA and ADA claims against individual defendants, as well as claims under ERISA and the LMRA – could not proceed and had to be dismissed. In addition, the M&O explained that the allegations in the complaint were insufficient to make out certain other claims, and that some claims appeared to be procedurally barred. For example, the M&O noted that plaintiffs' EEOC charge appeared to be untimely filed and that plaintiffs needed to allege a basis for equitable tolling.

Recognizing that plaintiffs were proceeding *pro se*, this Court afforded plaintiffs the

opportunity to amend the complaint. In a section entitled, "Leave to Amend," this Court described with particularity what additional information plaintiffs needed to provide. In addition, this Court advised plaintiffs that the failure to provide the information within 30 days would result in dismissal of the complaint.

In mid-December 2006, this Court received a one-page fax from plaintiffs, alleging that they had not received a copy of the M&O until December 14, 2006. Shortly thereafter, this Court received a 45-page letter, dated December 28, 2006. That letter did not purport to be an amended complaint, and could not be construed as such. Indeed, the letter stated that plaintiffs would not amend the complaint until this Court appointed counsel on their behalf. *See* Letter to Judge Townes from Susan and Joseph Tropeano, dated Dec. 28, 2006, at 13. The letter also contained several references to Robert LoPresti, law clerk to Justice Robert W. Schmidt of the Appellate Division, Second Department, and implied that Mr. LoPresti was involved in this case. *Id.* at 1-2.

In response to plaintiffs' letter, this Court sent plaintiffs a letter dated January 3, 2007, in which this Court *sua sponte* extended plaintiffs' time to file an amended complaint to March 2, 2007. The Court sought to disabuse plaintiffs of the notion that they were entitled to court-appointed counsel, explaining that this Court could not request counsel for them unless their case appeared "likely to be of substance." Letter to Mr. and Mrs. Joseph Tropeano from Hon. Sandra L. Townes, dated Jan. 3, 2007, at 2 (citing *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003)). The Court further noted that this threshold determination could not be made until plaintiffs amended their pleadings, and cautioned plaintiffs that their action would be dismissed if they did not do so.

In the interests of full disclosure, this Court informed plaintiffs of its connection to the

Appellate Division, Second Department. This Court described with as much precision as possible its prior contacts with Justice Schmidt and Mr. LoPresti, and advised plaintiffs that they could move this Court to recuse itself if they believed "that these minimal contacts create[d] an appearance of impartiality or impropriety." *Id.* at 2. However, the Court repeated that the amended complaint had to be filed by March 2, 2007, and advised plaintiffs that a recusal motion would not further extend their time to file the amended complaint.

In mid-February 2007, plaintiffs filed several hundred pages of documents, including a 57-page letter requesting that this Court recuse itself (the "Recusal Letter"). That letter alleges that Mr. LoPresti, Justice Schmidt and various other individuals are plaintiffs' "adversaries." However, the only alleged connection between Mr. LoPresti, Justice Schmidt and plaintiffs is that Mr. LoPresti's wife, Genevieve Lane LoPresti, represented plaintiffs for about half a year before moving to be relieved from plaintiffs' case in October 2005. In addition, the Recusal Letter asserts, based on this Court's prior decisions in this case and minimal connections to Mr. LoPresti, that this Court is biased against plaintiffs.

## DISCUSSION

*The Recusal Motion*

Section 455 of the United States Judicial Code, 28 U.S.C. § 455, governs the recusal of federal judges. *In re Aguinda*, 241 F.3d 194, 200 (2d Cir. 2001). This statute has two subsections. Subsection (b) contains a list of circumstances in which a judge must recuse himself or herself. Such circumstances include, in pertinent part, instances in which the judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). However, in interpreting this statute, the Supreme Court has stated that "judicial rulings alone almost never constitute a

4

valid basis for a bias or partiality motion," noting that such rulings may be "proper grounds for appeal, not for recusal." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Moreover, recusal is not required when the alleged bias on the part of the judge is "remote, contingent, or speculative." *United States v. Arena*, 180 F.3d 380, 398 (2d Cir. 1999) (quoting *United States v. Morrison*, 153 F.3d 34, 48 (2d Cir. 1998)).

The other subsection – subsection (a) – is a "catchall" provision which was added to § 455 in 1974. *See Liteky*, 510 U.S. at 548. It provides:

> Any justice, judge, or magistrate judge of the United States shall disqualify himself [or herself] in any proceeding in which his [or her] impartiality might reasonably be questioned.

The goal of this subsection is "to avoid even the appearance of partiality." *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 860 (1988).

Judges should not, however, "recuse themselves solely because a party *claims* an appearance of partiality." *Aguinda*, 241 F.3d at 201 (emphasis added). As Congress noted in the course of passing the 1974 amendment to § 455:

> [D]isqualification for lack of impartiality must have a *reasonable* basis. Nothing in this proposed legislation should be read to warrant the transformation of a litigant's fear that a judge may decide a question against him into a "reasonable fear" that the judge will not be impartial. Litigants ought not have to face a judge where there is a reasonable question of impartiality, but they are not entitled to judges of their own choice.

S.Rep. No. 93-419, at 5 (1973); H.R.Rep. No. 93-1453 (1974), reprinted in 1974 U.S.C.C.A.N. 6351, 6355 (emphasis in original). Thus, "[s]ection 455(a) requires a showing that would cause 'an objective, disinterested observer fully informed of the underlying facts [to] entertain significant doubt that justice would be done absent recusal.'" *Aguinda*, 241 F.3d at 201 (quoting

5

*United States v. Lovaglia*, 954 F.2d 811, 815 (2d Cir. 1992)).

"Recusal motions are committed to the sound discretion of the district court . . . ." *LoCascio v. United States*, 473 F.3d 493, 495 (2d Cir. 2007). Because the Court has an "affirmative duty . . . not to disqualify [it]self unnecessarily," *Mazzei v. The Money Store*, ___F. Supp. 2d___, 2007 WL 1121730, at *2 (S.D.N.Y. Apr. 12, 2007), "the grounds asserted in a recusal motion must be scrutinized with care." *Aguinda*, 241 F.3d at 201. "A judge is as much obliged not to recuse himself [or herself] when it is not called for as he [or she] is obliged to when it is." *In re Drexel Burnham Lambert Inc.*, 861 F.2d 1307, 1312 (2d Cir. 1988).

This Court has carefully reviewed plaintiffs' 57-page Recusal Letter, but finds no legal basis for recusing itself. Plaintiffs incorrectly allege that this Court is "connected" with several of their "adversaries": Appellate Division Justice Schmidt; his law clerk, Robert LoPresti; Mr. LoPresti's wife, Genevieve Lane LoPresti; Nassau County Supreme Court Justice Daniel Martin; his law clerk, Chris Verby; attorneys Thomas Liotti and Mr. DeWan; and a paralegal, Alan Ansell. Recusal Letter at 2. In fact, this Court is not even acquainted with any of the listed individuals, except for Mr. LoPresti and Justice Schmidt.

Mr. LoPresti and the justice for whom he works are not actually plaintiffs' "adversaries," since there is nothing to suggest that either Mr. LoPresti or Justice Schmidt are parties in any action involving plaintiffs. Indeed, plaintiffs admit that they have never had any contact with Justice Schmidt, but consider him an adversary solely by virtue of his "extensive contact" with Mr. LoPresti. Recusal Letter at 3. However, in a sworn affidavit attached to plaintiffs' Recusal Letter as Exhibit 8, Mr. LoPresti states that he has never met plaintiffs and has never reviewed any papers submitted by them.

Even assuming that Mr. LoPresti or Justice Schmidt could properly be characterized as

plaintiffs' adversaries, it would not be improper for this Court to adjudicate this case. As I noted in my January 3, 2007, letter to plaintiffs, I worked at the Appellate Division, Second Department, between March 2001 to July 31, 2004. Although Mr. LoPresti was Justice Schmidt's law clerk during that period and I recall seeing him in the courthouse, I do not recall having extensive contact with him. Justices of the Appellate Division typically have little contact with their colleague's law clerks. Therefore, if I had had extensive contact with Mr. LoPresti, it would have been so unusual that I would certainly remember it.

I do recall working with Justice Schmidt, but only in the same capacity in which I worked with the many other justices who sat on the Appellate Division. Our relationship was purely professionally; aside from work-related functions, we did not socialize. While we remain on friendly terms, he is not a close personal friend. I have never had occasion to discuss plaintiffs or any action involving plaintiffs with either Justice Schmidt or Mr. LoPresti. Therefore, plaintiffs' assumption that I am biased against them solely because I worked with Justice Schmidt and Mr. LoPresti at the Appellate Division is entirely unreasonable.

There is no other legitimate basis for plaintiffs' belief that this Court is biased against them. That belief appears primarily based on plaintiffs' perception that this Court's rulings to date have been adverse to them. Plaintiffs have not adduced any evidence, aside from what has taken place in this proceeding, to support their claims of bias.

Rather, plaintiffs' assertions that this Court is biased are entirely speculative. For example, plaintiffs speculate that the re-assignment of this case to the newly appointed Judge Cogan demonstrated that this Court was uninterested in plaintiffs' case. In fact, newly filed cases are frequently reassigned when a new judge is appointed to the bench. Similarly, plaintiffs' speculation that this Court did not read their December 28, 2006, letter before writing

7

its January 3, 2007, letter is completely unfounded. Accordingly, plaintiffs' request that this Court recuse itself is denied.

*Appointment of Counsel*

After this Court informed plaintiffs that it would not rule on their request for appointment of counsel until it received the amended complaint, this Court received a letter from Mrs. Tropeano's psychologist, Dr. Victor J. DeFazio, opining that Mrs. Tropeano's emotional state would not permit her to continue this litigation without risking further hospitalization. This Court respects Dr. Fazio's opinion and has no reason to question his assessment of Mrs. Tropeano's mental condition. Nonetheless, his letter does not provide any basis for reconsideration of this Court's decision regarding appointment of counsel.

First, plaintiffs, like other civil litigants, do not have the same rights as criminal defendants with respect to the appointment of counsel. The Sixth Amendment of the United States Constitution requires that counsel be appointed to represent criminal defendants. Civil litigants have no such Constitutional right. As a result, this Court cannot supply plaintiffs or any other civil litigants with an attorney, but can only "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). Furthermore, the Second Circuit has dictated that a district court should request counsel for a party only if it finds that the party's position is "likely to be of substance." *Ferrelli*, 323 F.3d at 204.

The letter submitted by Dr. DeFazio does not address this threshold question regarding the merits of plaintiffs' claim. Rather, the letter addresses plaintiffs' need for representation. This Court acknowledges that the issues in this case are somewhat complex and that plaintiffs'

stress-related conditions may render them unable to represent themselves effectively.  However, this Court cannot consider issues such as plaintiffs' ability to handle the case without assistance and the complexity of the case until plaintiffs demonstrate that the case is likely to be of substance.  *See id.*; *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir. 1989).

Although this Court has explained that it cannot determine whether plaintiffs' case is likely to be of substance until plaintiffs file their amended complaint, plaintiffs have flatly refused to do so.  Instead, they have filed voluminous papers that only serve to cast further doubt on the merits of their claims.  For example, they readily admit that their EEOC charge was not timely filed, but hold retained counsel responsible for this failure.  *See* Letter to Judge Townes from Susan and Joseph Tropeano, dated Dec. 28, 2006, at 25; Recusal Letter at 11.  However, a "lack of due diligence on the part of [a] plaintiff's attorney is insufficient to justify application of an equitable toll."  *South v. Saab Cars USA, Inc.*, 28 F.3d 9, 12 (2d Cir. 1994) (citing *Irwin v. Dept. of Veterans Affairs*, 498 U.S. 89, 96 (1990)).  Similarly, plaintiffs imply that they have meticulous records concerning the history of their dispute with defendants, but have yet to comply with this Court's request for a brief description of the claims raised in the Article 78 proceeding and a copy of the petition and decision in that case.  Their failure to supply this material implies plaintiffs' recognition that the *Rooker-Feldman* doctrine may bar at least some of plaintiffs' remaining claims against the DOE.

Moreover, even if this Court could find that plaintiffs were likely to succeed on the merits, this Court is not at all confident that it could even find counsel willing to represent plaintiffs.  As explained in this Court's January 3, 2007, letter, this Court cannot compel any

9

attorney to accept this, or any other, civil case on a *pro bono* basis. *Mallard v. United States Dist. Court for Southern Dist. of Iowa*, 490 U.S. 296, 305 (1989). The record in this case contains ample evidence of plaintiffs' dissatisfaction with former counsel, as well as an affidavit from Genevieve LoPresti alleging that she was the eighth attorney to represent plaintiffs. Ex. 25 to the Recusal Letter. This Court has no basis for assessing the credibility of Ms. LoPresti's allegation, but submits that the mere presence in the record of such an allegation would render it practically impossible to find *pro bono* counsel for plaintiffs.

*The Refusal to Amend the Complaint*

This Court first directed plaintiffs to amend their complaint on October 30, 2006. In December 2006, this Court received several pieces of correspondence from plaintiffs, including a one-page fax alleging that they had not received a copy of the Memorandum and Order until December 14, 2006, and a 45-page letter, dated December 28, 2006. That letter stated, among other things, that plaintiffs would not amend the complaint until this Court appointed counsel on their behalf. *See* Letter to Judge Townes from Susan and Joseph Tropeano, dated Dec. 28, 2006, at 13.

In response, this Court sent plaintiffs a letter dated January 3, 2007, in which this Court advised plaintiffs that it would not rule on appointment of counsel until plaintiffs filed their amended complaint. In light of plaintiffs' *pro se* status, this Court *sua sponte* extended plaintiffs' time to file that amended pleading to March 2, 2007. The Court expressly advised plaintiffs that their complaint would be dismissed if they failed to file their amended complaint on or before that date.

In a subsequent order which, among other things, granted plaintiff Joseph Tropeano's

10

motion to proceed *in forma pauperis*, this Court repeated its direction that plaintiffs file an amended complaint on or before March 2, 2007. *See Tropeano v. City of New York*, No. 06-CV-2218 (SLT), slip op. at 1, 2 (E.D.N.Y. Jan. 9, 2007). This Court once again advised plaintiffs that if they failed to comply with this Court's order within the time allowed, a judgment dismissing the complaint would be entered. *Id.* at 2.

Plaintiffs have not filed an amended complaint or anything which could be construed as such, and have not sought an extension of the March 2, 2007, deadline. Rather, in February 2007, they filed a 57-page recusal letter, along with a 14-page cover letter and numerous exhibits. In the Recusal Letter, plaintiffs insist that they are "WITHOUT A DOUBT, LEGALLY ENTITLED" to an attorney, Recusal Letter at 27 (emphasis in original), and chide this Court for ignoring their earlier refusal to amend the complaint, saying, "we informed you we will not amend our complaint, however, as usual it fell upon deaf ears!" *Id.* at 13. Later in that letter, plaintiffs reiterate their refusal even to attempt to file an amended complaint. Referencing letters written by Dr. DeFazio and Mrs. Tropeano's parents, plaintiffs accuse the Court of "constantly blatantly ignor[ing] that all parties informed you that we are NOT amending our complaint on our own . . . ." *Id.* at 31 (emphasis in original). In addition, plaintiffs state:

> If our complaint needs to be amended once it is filed at Federal Court and served to the defendants and the defendant's [sic] attorneys it will be; by the REPUTABLE, well-versed court appointed attorney!

*Id.* at 56 (emphasis in original).

From the foregoing, it is readily apparent that it would be futile to give plaintiffs additional time to amend the complaint. This action is, therefore, dismissed in its entirety.

## CONCLUSION

For the reasons set forth above, plaintiffs' motions for recusal and appointment of counsel are denied, and this action is dismissed in its entirety. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962). The Clerk of Court is directed to close this case.

**SO ORDERED**.

/s/
SANDRA L. TOWNES
United States District Judge

Dated: Brooklyn, New York
       May 24, 2007